I think it's for the record the motion that I believe you filed, am I correct, sir? No, Your Honor. to file and spanter your brief, portions of your brief that were omitted. Is that our understanding? Yes, that's the understanding. The previous counsel from my firm who wrote the brief filed it missing three pages of the argument, which was noticed when I started preparing for the brief. So I just filed what he had previously written attached to the brief you already have. Okay, well. So I think you should have the full brief now. I believe it. Well, for the record, your motion has been granted by the court. We did. Okay, thank you. May it please the court, gentlemen? Yes, you may proceed. My name is Brad Cosgrove, and I represent the petitioner, Selvyn Ornegretti, in this case. And from an introductory remark, I hate to say it, but this case brings back bad memories of algebra and arithmetic problems, word problems, essentially, from grade school. The case really was a case that was brought on a 19B by myself. And the issue as towards average weekly wage between the parties was whether or not overtime should or should not be included. There was never an issue about the time frame in which the average weekly wage should be calculated. As you can see on the stiff sheet that was submitted, I think in the record, it's page 49. The stiff sheet specifically read for the section five, which is the earnings section, on the right side, for eight weeks of work. What exactly did that mean? For eight weeks of work, that was the time. Did that mean that both of you were agreeing that only eight weeks of work should be counted? Yes, Your Honor, and that is evidenced, and I'll show you exactly how. If you look at the figure that the respondent put down for the amount of earnings. The record doesn't reflect what figure the respondent put down because it's cut off, and it only shows comma 359.10. And if I could just ask you to do one little arithmetic problem, you will see, if you look at Petitioner's Exhibit, and that, by the way, wasn't my fault. That's the copy that was made by the arbitrator. If you look to the record, which was Petitioner's Exhibit number two, that was the shortened version of the timesheet from Slurry Systems. If you add up the number of regular hours this man worked, you'll see that the total amount of hours worked was 246 hours, regular time. Multiply 246 by 25.85, his rate, that will give you a grand total of 6,359.10. Okay. Which, if you take that figure and look to the stiff sheet, is 6,359.10. So that's where that number comes from? Yes, sir. Okay. So there was an agreement by myself and the lawyer representing Slurry Systems that the time in which we were going to put in for the average weekly wage was the eight weeks of work that this gentleman worked for Slurry Systems. Because of the nature of the employment for a pile driver, they'll work at several different employers. As a matter of fact, Mr. Negrete, prior to this, had worked at somewhere between a half dozen to a dozen other pile driving companies. So rather than going through and getting subpoenas to all the other places that he had worked throughout the years to figure out how many hours he worked, we stipulated, let's look at the last eight weeks, decide how many hours he worked for the last eight weeks for this job, for this employer, because it was easily ascertainable, and that would be the basis of the average weekly wage. The sole issue for the arbitrator to decide was whether or not to include overtime that was mandatory on the job. Let me ask you a question. And, of course, all this you've just told us, none of that's in the record. All we have is that sheet that says for eight weeks of work out on the side, right? None of these discussions you've said, this is why we did it, we agreed to all this. But what's in the record is handwritten notation that says for eight weeks of work. And also my objection to the introduction of petitioners. And did you object because there was a stipulation to only eight weeks? Exactly. I don't think so. My objection was to relevance, that there is no relevance to the previous. In that objection, at any point did you say, wait a minute, we've stipulated to only eight weeks, so I object to any evidence about any other weeks of work? If you look at page 142 of the record, they tried to put in exhibit number three, which was that wage. Why don't you read your objection there? Respondent's exhibit three is a wage statement. Mr. Cosgrove, that's myself. The only objection I have to that is one of relevancy based on petitioner's exhibit two going into evidence. Really the only dates that are of issue should be the dates on respondent's two sick. Because it should have been. You didn't say, we filed a stip sheet saying that only, we've stipulated to only eight weeks. I'll tell you that. You're just saying my exhibit is the appropriate exhibit. No, I objected to the information containing dates that were not subject to the stipulation made by the parties. You didn't say that. Explicitly, I didn't. In hindsight, I'm telling you, it's not explicitly there, but that is what the objections were all based upon. There's another objection to the record when it was first introduced to a witness that was testifying. Aside from the number of weeks. The statute provides four different methods for calculating average weekly wage. Yes, it does. In your opinion, did the commission correctly or incorrectly calculate the average weekly wage? Incorrectly. Why is that? The basis of the commission's decision of what his average weekly wage was based upon 13 separate weeks of work. The 13 weeks that it took were only the weeks that he was employed by slurry systems. Not into consideration the other half dozen to dozen contractors that he worked for. And the basis for that is there was a stipulation between myself and the Respondents' Council where I did not put into evidence any earnings other than that in which there was a stipulation on. So bringing us within the purview of the statute, which method of the four do you believe the commission should have utilized? Weeks and parts thereof, Your Honor. Well, one, two, three, or four. Pick a number. There's four methods. It was behind each one of those doors. Yes. And then I'll tell you it's behind the door if you give me the number. But there's four numbers, four methods here, and I'm interested in hearing which one you believe was correct in this case. Okay. And I think the weeks and parts thereof method, which would have been the eight weeks that were submitted as by agreement by the parties. Yeah, but number one, two, three, or four. There's four methods. I don't need to be brief. Section 10 provides four different methods for calculating average weekly wage. One, by default, average weekly wage is actual earnings during the 52-week period preceding the date of injury, illness, or disablement. It goes on under 10, if you have it there, to list four alternative methods. Which one do you believe is the correct method? The one where you look to a portion of the year, which is a certain amount of weeks, where a person works a regular job. And that would be which number? I believe it's four, but I don't know exactly what numbers you're looking at. Which case? Well, your argument is that the tuition should have only looked at this job at the BP plant. Correct. This guy's a union worker. He gets called out of the union hall for various jobs. And what they did was they went back and picked up a job in March where he worked for one week at some other location or whatever. Where he could have worked for five other employers that same week. And instead of it being 20 hours at work, he worked 60 that week. They treated him as if he was a permanent employee who worked for them all year. That's what you're objecting to, right? Exactly. And because of the stipulation, the evidence that I submitted was that there was no stipulation. You're saying they shouldn't have picked up those previous weeks because, you know, it should have only been the BP job because he worked that job for less than a year. Correct. That's true. However, though, I would say that if there wasn't a stipulation between myself and defense counsel, I would have submitted other evidence such as his earning sheets from other employers. Why would you need to submit concurrent employment if the method that you're using is only the time he has in on that job? I wouldn't have needed to. I wouldn't have needed to. By the way, to answer your question, it is door number three. I wish you should have used the third method, which applies to workers employed less than 52 weeks. Yes. That would be the suggested answer. And the only reason that I didn't answer that question is because I didn't know which numbers were which. So I didn't want to say door number three and it would be the wrong door. So essentially that's true. Well, if you didn't have the stipulation, would you have presented evidence as to what was made during the month of November when your client worked for the same employer? We're talking back into the realm of possibilities as to what I would have done. And I can't answer that. Well, you said a few minutes ago what you would have done without the stipulation. I wouldn't have went to trial on that date. Okay. Period. Well, what is the problem with considering, I don't know, for those three or four weeks, whatever it was, and however many days it was, that your client worked for the same employer in November since the accident itself or the time frame that you agreed to started in December? Do you want to know the factual problem or the legal problem? Because there's two different ones. The legal problem is the legal problem, and it's based on two different things. One is that administrative code that's set forth in the Walker case. That's that 7303.40 that states, once you file the stip sheet, that it shall be filed with the arbitrator as a stipulation of the parties and a settlement of the questions in dispute in the case. And what Walker goes on to say is that essentially the arbitrator and the commission does not have the authority to do anything other than that which is agreed by the parties. So from a legal standpoint, I would say what you asked, the answer would be no, that you can't look back at those other weeks from a legal standpoint because of the stipulation. Now, if we take the stipulation out of the realm and we look at it from a standpoint factually, is there a factual problem with that? And the answer is yes, because that was not full-time employment. And if you look at a small section of a job that he had at one week, there's no evidence in the case as to what else he was doing that week. There's no evidence as to what employers other than slurry systems he would have been working with at that same concurrent time frame. And because this was a hire for a certain job, it gives you essentially the basis of a full-time employment for a defined period of time. Well, is that what the commission did then? The commission did is they took petitioner's exhibit number three, excuse me, respondent's exhibit number three, that is all the time that he worked for a slurry system. Not looking at any other employment from any of the other contractors that he worked with, the half dozen to a dozen other contractors, and said we're going to decide his average weekly wage based on a temp job he had and then based on a more permanent fixed job that he had at the BP project. And the problem with that is it's not the same nature of work. You're looking at a small temp job and trying to add that up and saying, well, since he only worked X amount of hours at another job for slurry systems, months before the more permanent job, we're going to use that. And what is the case or statute you're citing that demonstrates why that was wrong for them to have done what they did? That is the Part B of my opening brief that I filed in the case that sets forth. There's really one case that talks about the nature of an individual's employment that changes, and it is the Village of Winnetka case, essentially. And not only, I think the important thing to take into consideration for this particular information that was taken and used for the average weekly wage, there wasn't a single shred of evidence or testimony from anybody that Mr. Negrete worked at that time frame, what he performed on those dates, and what the nature of the work was, whether he worked anywhere else, whether that, in fact, is true employment during the time of the job. It's actually South Shore High School. We've come later. There's a third-party case going on. So we've learned an awful lot more about other stuff. You said your client was moving up the union ladder? Yes, he was. He was a fourth-year apprentice. Is that in the record, or is that just in the brief? I think that the fact of the matter is, if you just look at the nature of his employment, that he testified that he was in his apprenticeship program. And knowing the nature of an apprenticeship program, you move up the ladder of an apprenticeship merely by putting the time in. And the higher up of an apprentice you are, the more seniority you get, you become a journeyman, the better job you get. And I think the additional part of it is, he actually got hired on this BP job, which was a terrific job to have as a pile driver because it's steady work in the winter months. That was a job that started in December that went all the way through. It's still partially going on now, but from a pile driving standpoint. Counsel, you'll have time on reply. Thank you. Let me ask you a question, Counsel, before you get started. Okay. Since, I mean, we now have your expanded four-page argument, and I see you have a line here, defendant stipulated to an average weekly wage. As part of that stipulation, defendant acknowledged that a certain amount of wages were earned in eight weeks. Did the respondent stipulate that only eight weeks should be considered in the average weekly wage? I was not the attorney on that case that tried the case. What I have is the same as what you have, which is the stipulation sheet. And that attorney no longer works for our firm. For the record, did you state your name? I'm sorry. I'm Lindsay Beach. I represent Story Systems. Thank you. Thank you. What I have to look at is the same thing that you have to look at, which is this stipulation sheet. And the notation on the side of the sheet that says it's not. You're not prepared to agree or admit that there was a stipulation that only eight weeks should be considered. Correct. All I see is the same thing that you see that says for eight weeks of work. And since there is no evidence presented at trial regarding that and there's nothing in the record, I have to believe that that is counsel's note, that his calculation is for eight weeks of work. And so the stipulation portion of it seems to be his primary argument. And, unfortunately, all we have is a piece of paper with a notation on it. He also cites, regarding the stipulation, the Walker v. Industrial Commission case. And in that case, Walker involved a dispute of language on a very similar stip sheet for TTD. In that case, the employee stated he was owed TTD for 111 weeks. The employer said they counted with 84 weeks, which had been paid. And the court held that the commission could not modify the TTD benefits to a period less than the 84 weeks due to the stipulation on the sheet. I think the facts in this case are distinguishable from that. First of all, this involves average weekly wage, not TTD. Secondly, it's clear in the stipulation sheet that Respondent checked a box here that says disputes. That we can see. Respondent disputes the average weekly wage that the petitioner alleged. Further? For the dispute, very plainly, clearly from the stip sheet, there was a dispute about whether overtime should be included. True. And the numbers, I mean, it's correct, isn't it, that if you take the numbers that the petitioner and the Respondent put in there, that's what the difference is. That is true. It's overtime for eight weeks. Correct. And you heard Mr. Cosgrove, you know, his argument about if you take those eight weeks and take regular time earnings, they add up to the amount that I think you say in your brief. The math, Mr. Cosgrove, it is correct. You know, so that does all sound like everybody was working on eight weeks, weren't they? And now that we have page four of your brief, you say that it was 6,359.10. It says that in the brief. However, it's not clear in the stipulation sheet. And what we're going by is the evidence that's been submitted to the Court and what's in the record. So is the commission's finding correct or incorrect? Well, the commission's finding is regards to the average weekly wage calculation. Unfortunately, I'm not the person that wrote the original brief. I might have said it a little bit differently. But he stated that the calculation was correct as far as taking the total earnings and dividing it by the number of weeks in which the commission determined it was 13.571 weeks versus Mr. Cosgrove's assertion that it's 7.51 because they took the entire amount of time he had worked for Slurry Solutions doing different jobs. He was not a permanent employee of Slurry, was he? It wasn't. No, it wasn't a permanent job. He did different projects for the company. He was called out from time to time. And in this situation, he was called out for a week in March, four weeks in November, and then called out again the week ending, I think it was December 21st. Yes, that is correct. Right. In the meantime, he worked other jobs. Well, we don't know. We don't know. It's not in the record really whether he did or not. So why should the commission have included that? They probably shouldn't have included that, right? No, the commission should have no idea about that. Mr. Cosgrove didn't even ask him any of those questions during the trial. And so now he's saying, well, he could have been making more money. He could have worked these other jobs. His average weekly wage could be higher. He would have been moving up the union ladder. But that's all it's affecting. Well, there's no question. I mean, the boss who testified said this was on a job-by-job basis, and he was called for the BP job and began that job. That was a separate job. And at the end of each job, he's terminated. He's done. I mean, all that was testified to, wasn't it? Correct. That was testified to by the President's answer. And shouldn't that have lent the calculation to be only on the BP job then? That is not what the commission found. Right. But is that right what the commission found? Is it supported in the evidence? Well, I believe that it's correct, obviously.  And which option are you suggesting? I'm going to choose door number one, I believe. One? And that is going to be section 10 of the act, say to find the actual earnings of the employee and the employment he was working at the time of the injury during the 52 weeks immediately preceding the date of accident. And so although we don't have a full 52 weeks here, we do have 13.751 weeks. If we don't have a full 52, then we go to two, don't we, door number two? He was missed more than five days. I mean, it can't be option one. Right, because it's not a full 52. Correct. And so if you divide the number of weeks that he worked by the total earnings, we come out with a 13.751 weeks, and they get the calculation that the commission came to as far as the average weekly wage. So what's wrong with calculation method number three? If the employee's employment began during the 52-week period, the earnings during employment are divided by the number of weeks and parts thereof during which the employee actually earned wages. Why doesn't that apply? That's an excellent question. Do you have an answer to that good question? Excellent. He always asks good questions. I can tell. He has some great questions in the past. Well, maybe not that good. Unfortunately, I'm a little constrained to what was written in the previous brief, and arguing outside of it is going to be problematic for you. So we'll leave it as a question. So we'll leave it as an excellent question and state that we believe that the commission correctly determined the average weekly wage by dividing his total earnings for slurry systems by the 13.751 weeks that he actually worked in. Thank you. Thank you, counsel. Counsel, you may reply. Gentlemen, I think this will address the question you had asked me. Did I ever explicitly state at the trial, hey, this is only for this eight-week period of time? And I think if you look at my opening brief, at page nine on the opening brief, there's a section of a question, answer, and some objection kind of stuff that reads, Your Honor, if I could just state the difference between 1 and Petitioner's Exhibit 2, and then Respondent's Exhibit 3, there lists a bunch of payments from other projects. Petitioner's Exhibit 2 is just for this project because the TTD rate that's going to be asserted would have been just the weeks and parts of the employment for which he was injured. Respondent's Exhibit 3 sets forth every payment with slurry over the 365-day period. Arbitrator Carlson, okay. Mr. Cosgrove, a clerical thing. Arbitrator, would you agree with that? Not counsel here, but the counsel who tried the case, she says yes. She agrees with that. I think that's as close as I can come to an agreement from the defendant. Also, then, questions about where Mr. Negrete had worked prior to this particular incident. And the answer was a question that was brought up as, well, Mr. Cosgrove didn't ask at the trial. I didn't ask because we had an agreement that it was the eight-week period, and that's why I didn't do it. You can understand why, for us, reading a cold record, it's important to make all this very clear instead of just having a little handwritten, uninitialed notation outside. Yeah, and I do understand now that you don't have an opposing counsel saying, yes, we made a deal. Yes, and you know what? The Upton Sinclair Sausage Factory comment did ring true because, you know, you have five different hearings every day, and it's rush, rush, rush, and you're waiting and waiting and waiting and waiting, and actually on this one, we waited five hours to be heard. And by the time you're heard, it's, you know, get it over with, go, go, go. Don't ask any more questions. Get this done. Come on, come on, come on. And that's what you're stuck with. That's all I've got for you. Thank you, gentlemen. Thank you, counsel. The matter will be taken under advisement for indisposition of the issue. The court will stand at recess until 9 o'clock tomorrow morning.